# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

In the matter of Application of
ELENOR de LEON,

    Petitioner.

Case No. 1:19-mc-15

Black, J.
Bowman, M.J.

## ORDER

This matter is before the Court on a Motion to Quash and Motion to Vacate Order Granting Sec. 1782 Application by Intervenor Parties Al Safwa International Company for Industrial Investments Limited, Al Wafra International Company for Industrial Investments Limited, Ismail Ali Abudawood Trading Company, Modern Industries Company-Damman, Modern Industries Company-Jeddah (hereinafter "Abudawood Group Companies" or "Intervenors") (Doc. 14) and the parties' responsive memoranda. (Docs. 22, 25). Also before the Court is Petitioner's motion to compel compliance with the two subpoenas issued on October 16, 2019 and served on The Procter & Gamble Company ("P&G"). Respondent the Procter & Gamble Company ("P&G") also filed a memorandum in opposition to Petitioner's motion to compel compliance with subpoenas issued. (Doc. 21).

**I . Background and Facts**

Sheikh Osama died intestate on June 13, 2017, in Jeddah, Saudi Arabia (Hammad Decl. ¶ 4). Ms. de Leon, the Petitioner herein, and Sheikh Osama had been married for over 26 years at the time of his death and together they had one daughter, AA, who is currently seventeen years of age. (Doc. 1, de Leon Decl. ¶ 3). Ms. de Leon, as the widow

of Sheikh Osama, is entitled under Sharia law, the applicable Saudi law, to her widow's share of his entire estate, or 12.5%. (Doc. 1, Hammad Decl. ¶¶ 9-10). Likewise, Ms. de Leon's daughter, AA, is entitled to her share as one of the decedent's daughters (along with her three half-sisters), which daughter's share is 11.805%. (Doc. 1, Hammad Decl. ¶¶ 9-10). Ms. de Leon has been engaged in litigation in Saudi Arabia, the Central District of California, and the Cayman Islands related to the distribution of assets and property of her late husband.

There are a total of twelve cases pending in the Saudi courts relating to this matter, ten in the Commercial Court in Jeddah and two before the Personal Court, also in Jeddah. Ms. de Leon and her daughter, AA, are defendants in each of them. (Doc. 1, Hammad Decl. ¶12). Nine of the pending cases were brought against Ms. de Leon and her daughter before the Commercial Court on July 23, 2018, by Saudi companies that are each part of the Abudawood Group, which cases involve the defendants' rights of inheritance from the estate of Sheikh Osama.

In these cases, the issues include whether Petitioner and AA will be required to take distribution of shares of the companies, whether they can have their interests bought out at fair value, and what the fair value of such interests is. (Doc. 1, Hammad Decl. ¶¶ 12-14). One of the cases, No. 5832, is brought by an Abudawood Group Company, Al Safwa, which is a joint owner with P&G of the two P&G/Abudawood joint venture companies; namely: Modern Industries Company-Dammam (which may also be known as Modern Industries Company Limited) ("Modern Industries") and Modern Industries Company-Jeddah (which may also be known as Modern Products Company Limited) ("Modern Products") (Doc. 1, Hammad Decl. ¶14). Petitioner seeks discovery from P&G

regarding the financial performance of the joint venture companies, Modern Products and Modern Industries (or together referred to as the "Modern Entities").

Onyx Financial Consulting ("Onyx") was the initial valuation firm engaged to value the assets held by the estate of Sheikh Osama. Between December 2017 and February 2019, Ms. de Leon and her counsel were under the impression, from Attorney Trinklein, counsel for the Abudawood Group and Sheikh Anas Abudawood and Sheikh Ayman Abudawood, that the Onyx report was in the process of being prepared and inquired multiple times on the status. (Ng Decl. ¶¶ 8-9). At one point, Ms. de Leon's attorneys were told Onyx was awaiting receipt of a five-year projection from P&G, among other projections. (Ng Decl. ¶ 9). See also, Mr. Trinklein's May 16, 2018, response to Ms. Ng's inquiry. (Ng. Decl. Exhibit 1). Following a number of requests, certain financial statements and Articles of Associations for some of the Abudawood Group companies were finally delivered by May 21, 2018. (Ng Decl. ¶ 10). Upon review, counsel for Petitioner determined that there were several documents and companies that were omitted. Ultimately, the Saudi court ordered the Onyx valuation disregarded.

On October 16, 2019, this Court issued its order granting Ms. de Leon's ex parte petition for discovery from P&G under 28 U.S.C. §1782(a). (Doc. 6). As directed by the Court's order, the Clerk issued the two requested subpoenas on the same date, which subpoenas were duly served on P&G at its headquarters in Cincinnati later on October 16, 2019. (Docs. 9 & 10). The first subpoena was for production of documents on November 6, 2019 ("Document Subpoena"). (Doc.9) The second subpoena was for the organizational deposition of P&G on November 20, 2019 ("Deposition Subpoena"). (Doc. 10).

After this Court granted Ms. de Leon's ex parte petition on October 16, 2019, the Saudi court approved the appointment of Mr. Subhi of Deloitte as the valuator. (Doc. 14 – PAGEID #: 236.) However, it was later discovered through Mr. Subhi's own disclosure that Deloitte had also performed prior audits of Abudawood Group entities, which could be considered to be a conflict of interest. (Hammad II Decl. ¶ 15). The Saudi court on November 27, 2019, decided that Deloitte could proceed as the valuator, but, given the circumstances, the court reserved the right to add another valuator to prepare a further report if the parties, including Ms. de Leon, ultimately did not accept Deloitte's valuation. (Hammad II Decl. ¶ 12.).

On November 1, 2019, the Court, with the consent of Ms. de Leon, entered an Agreed Order of Intervention allowing a number of parties to the Saudi Arabian proceedings underlying Ms. de Leon's request for discovery to intervene. (Doc. 13).

Thereafter, on November 14, 2019, the Abudawood Group Intervenors filed the instant motion to quash and motion to vacate the Court's prior order allowing the requested subpoenas to be served on P&G. (Doc. 14). Plaintiff subsequently filed a motion to compel compliance with the subpoena's issued to P&G. (Doc. 19).

**II. Analysis**

**A. Controlling Law**

28 U.S.C. §1782(a), provides in its entirety:

§1782(a) The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal, including criminal investigations conducted before formal accusation. The order may be made pursuant to a letter rogatory issued, or request made, by a foreign or international tribunal or upon the application of any interested person and may direct that the testimony or statement be given, or the document or other thing be produced, before a person

4

> appointed by the court. By virtue of his appointment, the person appointed has power to administer any necessary oath and take the testimony or statement. The order may prescribe the practice and procedure, which may be in whole or part the practice and procedure of the foreign country or the international tribunal, for taking the testimony or statement or producing the document or other thing. To the extent that the order does not prescribe otherwise, the testimony or statement shall be taken, and the document or other thing produced, in accordance with the Federal Rules of Civil Procedure.

Additionally, the proceeding before the foreign tribunal must be either "reasonably contemplated," or must be actually pending. *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 259 (2004)

In *Intel*, the Supreme Court set out four discretionary factors that are to be considered by the district court in deciding whether to issue an order allowing discovery under Section 1782, namely: (1) whether the person from whom the discovery is sought is a participant in the foreign proceeding such that the discovery is within the foreign tribunal's jurisdictional reach and thus accessible absent Section 1782 relief; (2) the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign court to U.S. federal court assistance; (3) whether the Section 1782 request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of the foreign country or the United States; and (4) whether the subpoena contains unduly intrusive or burdensome requests. 542 U.S. at 264-66.

**B. The subpoenas were properly issued under 28 U.S.C. §1782**

The Intervenors argue that Ms. de Leon fails to meet the mandatory requirements of 28 U.S.C. § 1782. The Intervenors also argue that the *Intel* factors also weigh in favor of their Motion to Quash. Petitioner, however, asks the Court to compel compliance with the properly issued subpoenas to P&G. The arguments will be address in turn.

*1. 28 U.S.C. § 1782*

With respect to § 1782, the Intervenors contend that Ms. de Leon's Application fails to satisfy the first and second requirements:

(1) the target is found in the judicial district;

(2) the discovery is meant for use before a foreign tribunal;

*Id.* In this regard, the Intervenors argue Modern Industries and Modern Products are the true targets of Ms. de Leon's subpoenas, but that they do not reside in the Southern District of Ohio.

To establish that a corporation is "found" in a judicial district where it was not incorporated and does not have its headquarters, "the applicant must establish that the corporation undertakes 'systematic and continuous local activities'" there. *In re Application of Inversiones y Gasolinera Petroleos Valenzuela*, *S. de R.L.*, 2011 WL 181311, at *7 (S.D. Fla. Jan. 19, 2011). An attenuated affiliation with a domestic enterprise does not make a foreign corporation "found" in the judicial district for the purposes of § 1782. *In re Certain Funds, Accounts, and/or Inv. Vehicles Managed by Affiliates of Fortress Inv. Grp. LLC*, 2014 WL 3404955, at *5 (S.D.N.Y. July 9, 2014) (rejecting the theory that KPMG International was "found" in S.D.N.Y. because its U.S. affiliate was in NYC—noting they were "distinct legal entities") (citation and internal quotation marks omitted).

The Abudawood Group Companies provide distribution and market-brand development services for consumer products in the Middle East, including P&G products. (Almawajdeh Decl. ¶ 5.) Al Safwa, Modern Industries, and Modern Products do not have any direct relationship with P&G, the U.S. entity that received Ms. de Leon's subpoenas.

(See ECF No.1 1-2 ("Hammad Decl.") ¶ 23.) Ms. de Leon's counsel explains that P&G's "business activities in Saudi Arabia are through Modern Industries and Modern Products—the joint venture entities formed with the Abudawood Group . . .." (Id.) But the Ohio P&G entity is not one of the joint venture partners. Rather, the Abudawood Group Companies partner with a Swiss entity and P&G subsidiary, Detergent Products SAR ("Detpro"), which is not "found" in the Southern District of Ohio. (Almawajdeh Decl. ¶ 6.) Likewise, the Abudawood Group Companies have never operated in the United States or Ohio. (Id. ¶¶ 3–4.)

While Ms. de Leon has learned through the subsequent pleadings in this action that Detpro is the legal entity identified in the venture, P&G itself is the clear business partner. A mere viewing of the Abudawood Group's website reflects P&G is repeatedly referenced as the venture partner, along with its trademarked logo. (See, Hammad I Decl., Exhibit B PAGEID #: 35-64.) Regardless of specific corporate structures involved, this venture is held out to the public as one between the Abudawood Group and P&G.

Here, Ms. de Leon seeks information only from P&G, not the joint venture companies themselves (i.e., the Modern Entities) or the Abudawood Group. The point is that P&G either has the subpoenaed evidence or it doesn't. Petitioner contends P&G cannot produce, and Ms. de Leon is not asking it to produce, any evidence that it does not have in its own "possession, custody or control."

As the parent to Detpro, P&G is found in this Court's district and can be ordered to produce Detpro's records determined to be in its "possession, custody or control," regardless of where the evidence may be physically located. If P&G doesn't have the requisite possession, custody or control, P&G can speak for itself and say so. The

objective of this petition is to obtain evidence directly from the Cincinnati-based partner in this joint venture, including evidence regarding the finances of the F Entities. In light of the foregoing the undersigned finds that the first requirement of § 1782 is met.

With respect to the second requirement, the Intervenors argue that Petitioner is attempting to misuse § 1782 to Obtain Discovery in the Action Pending in the Central District of California. This contention is unavailing. An applicant can use § 1782 to "seek discovery of any materials that can be made use of in the foreign proceeding to increase [the] chances of success." *In re Grynberg*, 223 F.Supp.3d 197, 200–01 (S.D.N.Y. 2017). This requirement focuses on the "practical ability of an applicant to place a beneficial document—or the information it contains—before a foreign tribunal." *In re Accent Delight Int'l Ltd.,* 869 F.3d 121, 131 (2d Cir. 2017) (emphasis in original).

Here, as noted by the Petitioner, even if the evidence sought would also be useful in the pending case in the Central District of California, that does not limit Ms. de Leon's ability to seek the discovery in this manner. In fact, courts have supported the notion that discovery obtained through Section 1782 proceedings may be used in other cases, even within the United States. As the Eleventh Circuit noted in *Glock v. Glock*, Inc., 797 F.3d 1002 (11th Cir. 2015), there is "nothing in the language of § 1782 that purports to limit later uses of evidence that have been properly obtained under § 1782." Here, the California case is stayed pending the valuation taking place in the Saudi action. Thus, the information sought will be used in a foreign proceeding as required by § 1782

   2. *Intel Factors*

The Intervenors further argue that that the factors outlined in *Intel Corp. v. Advanced Micro Devices, Inc.,* weigh in favor of their motion to quash. This assertion is

8

not well-taken.

As noted above, in *Intel*, the Supreme Court set out four discretionary factors that are to be considered by the district court in deciding whether to issue an order allowing discovery under Section 1782, namely: (1) whether the person from whom the discovery is sought is a participant in the foreign proceeding such that the discovery is within the foreign tribunal's jurisdictional reach and thus accessible absent Section 1782 relief; (2) the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign court to U.S. federal court assistance; (3) whether the Section 1782 request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of the foreign country or the United States; and (4) whether the subpoena contains unduly intrusive or burdensome requests. 542 U.S. at 264-66.

Here, the first *Intel* factor is met, namely P&G is not a party to the Saudi Action. Next, "the nature of the foreign tribunal, the characters of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance,"—weighs in favor of granting the application. There is nothing in the record before the Court to suggest that courts would not be receptive to the assistance sought here.

Notably, the Hammad declaration shows that the Saudi Commercial Court appointed Valuator, Mr. Walid Subhi, "will receive, accept, and consider the documents and information obtained from P&G." (Hammad Decl. ¶22). Further, Dr Hammad opines that the Saudi Commercial Court will consider the court-appointed Valuator's report in determining the fair value of Ms. de Leon's and her daughter's inherited interests from Sheikh Osama's estate.

The Intervenor's argue that Ms. de Leon's Saudi counsel does not cite any court order, Saudi law, legal principle, treaty, constitutional provision, or statement from Deloitte in support of his contention that "the valuator appointed by the Saudi court will receive, accept, and consider the documents and information obtained from P&G at the direction of a U.S. federal court . . . ." (See Hammad Decl. ¶ 22.) Dr. Hammad instead cites—exclusively—his own "opinion based upon [his] professional experience", in support of his hypothesis. (Id.). Despite this assertion, the Intervenors also fail to cite any court order, Saudi law, legal principle, treaty, constitutional provision, or statement from Deloitte that the Saudi court would not consider such information. Accordingly, the second factor weighs in favor of granting the application.

The Intervenors further argue that the third factor is not met because Petitioner seeks to use the discovery sought in the stayed action pending in the Central District of California. However, as noted above, the California action is stayed pending the valuation by the Saudi Court. As such, Petitioner argues that there is nothing regarding the nature of the proceedings in Saudi Arabia that suggests that the request for evidence from P&G would or seeks to circumvent the policies of the Kingdom of Saudi Arabia. To the contrary, the fact that the evidence presented shows that both the Valuator and the Saudi Commercial Court will receive and consider the evidence received from P&G. The undersigned agrees.

The fourth *Intel* factor is whether the discovery request is "unduly intrusive or burdensome." *Intel Corp.,* 542 U.S. at 265. In its opposition to Petitioner's motion to compel, P&G asserts that the more than 100 requests for production and 46 different deposition topics would impose a substantial burden on P&G. P&G further asserts that

the Subpoenas are facially overbroad. P&G further asserts that the information sought is located primarily outside of the United States. Petitioner, however, contends that she has taken steps to narrow the requests, limit their use to the pending Saudi case (through her proposed protective order), and offered to meet with P&G to address the challenges it is identifying and to better understand what allegedly makes her already tailored requests too much of a burden for P&G such that the parties might be able to agree on an even more narrow approach to the requests.

In light of the foregoing, the discretionary factors outlined in *Intel*, also weigh in favor of the issuance of the subpoenas in this matter.

### III. Conclusion

In light of the foregoing, it is herein **ORDERED** that the Intervenor's Motion to Quash and Motion to Vacate Order Granting Sec. 1782 Subpoena (Doc. 14) is **DENIED**; Petitioner's motion to compel compliance with Subpoena's Issued to P&G (Doc. 19) is **GRANTED**. It is further **ORDERED** that, within **TEN days** of this Order, Petitioner and P&G are directed to meet and confer in good faith to reach an agreement regarding the scope of specific documents requested, any ESI issues and deposition topics. If Petitioner and P&G are unable to reach a consensus, the parties shall contact the Court to schedule an informal discovery dispute conference.

**IT IS SO ORDERED.**

　　　　　　　　　　　　　　　　　　　　*/s Stephanie K. Bowman*
　　　　　　　　　　　　　　　　　　　　Stephanie K. Bowman
　　　　　　　　　　　　　　　　　　　　United States Magistrate Judge