**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | | |
|---|---|---|
| IN THE MATTER OF APPLICATION | : | Case No. 1:19-mc-15 |
| OF ELEANOR DE LEON, | : | |
| | : | Judge Timothy S. Black |
| Petitioner. | : | |
| | : | Magistrate Judge Stephanie K. |
| | : | Bowman |

**DECISION AND ENTRY**
**AFFIRMING THE ORDER OF THE**
**UNITED STATES MAGISTRATE JUDGE (Doc. 31)**

This case is before the Court pursuant to the Order of General Reference to United States Magistrate Judge Stephanie K. Bowman. Pursuant to such reference, the Magistrate Judge reviewed the pleadings and, on January 27, 2020, issued an Order compelling The Procter & Gamble Company ("P&G") to comply with two subpoenas issued pursuant to 28 U.S.C. § 1782(a) (the "Order"). (Doc. 31). On February 10, 2020, both P&G and five intervenors[1] (collectively the "Objectors") filed objections to the Order (collectively the "Objections").[2] (Docs. 36, 38). Thereafter, on February 19, 2020, Petitioner filed a response in opposition to the Objections. (Doc. 39).

The Court will address the Objections after setting forth the background facts and legal standard applicable to its analysis.

---

[1] The five intervenors are: Al Safwa International Company for Industrial Investments Limited ("Al Safwa"), Al Wafra International Company for Industrial Investments Limited, Ismail Ali Abudawood Trading Company, Modern Industries Company-Damman ("Modern Industries"), and Modern Industries Company-Jeddah ("Modern Products") (collectively, the "intervenors"). (Doc. 11). Petitioner and P&G consented to their intervention. (*Id.*)

[2] Due to a docketing error, P&G had to refile its objections on February 12, 2020. (Docs. 37, 38). Nonetheless, the Court **DEEMS** P&G's objections timely—*i.e.*, submitted on February 10, 2020.

## I.  Background facts[3]

### A.  The underlying litigation

On June 13, 2017, Sheikh Osama, a prominent businessman, died intestate in Jeddah, Saudi Arabia.  (Doc. 31 at 1; Doc. 1-2 at ¶ 4).  Upon his death, Sheikh Osama's interest in a group of companies—the "Abudawood Group companies"—passed to his heirs.  (Doc. 31 at 1–2; Doc. 1-2 at ¶¶ 8–9, 10–12).  Sheikh Osama's wife ("Petitioner") and daughter ("AA") inherited a percent of that interest pursuant to Sharia Law.  (Doc. 31 at 2; Doc. 1-2 at ¶¶ 10–12).

On June 11, 2018, Petitioner/AA commenced a lawsuit against various Abudawood Group companies, relating to the distribution of Sheikh Osama's assets, in the Central District of California (the "California Litigation").[4]  (Doc. 14-2 at ¶ 8; Doc. 14-23 at ¶ 2, Ex. A).  In the California Litigation, the parties dispute, *inter alia*, whether the Abudawood Group companies are required to buy out Petitioner/AA's inherited interests at fair market value.  (Doc. 14-23 at Ex. A).

On July 23, 2018, various Abudawood Group companies commenced various lawsuits against Petitioner/AA, relating to the distribution of Sheikh Osama's assets, in the Saudi Arabia Commercial Court (the "Saudi Litigation").  (Doc. 1-2 at ¶¶ 12–14;

---

[3] The Order contains a comprehensive recitation of the background facts underlying this dispute. (*See* Doc. 31).  The Court incorporates that recitation of those background facts herein by reference.  (*See id.*).  The background facts set forth in section I, *infra*, constitute only those background facts which are necessary to understand the analysis set forth in section III, *infra*.

[4] Petitioner/AA also named Sheikh Osama's brothers as defendants in the California Litigation. (Doc. 14-23 at ¶ 2, Ex. A).

Doc. 14-2 at ¶ 9).  In the Saudi Litigation, the parties again dispute, *inter alia*, whether the Abudawood Group companies are required to buy out Petitioner/AA's inherited interests at fair market value.  (Doc. 1-2 at ¶ 13).

Following the commencement of the Saudi Litigation, Petitioner asked the Saudi court to order a buyout of her/AA's inherited interests.  (*Id.*; Doc. 14-2 at ¶ 9).  While it appears that the Saudi court has reserved any decision on whether such a buyout is ultimately appropriate (Doc. 14-3 at ¶ 19), the Saudi court has appointed a valuator— Deloitte Touche Tohmatsu Limited ("Deloitte")—to perform a valuation of the Abudawood Group companies (Doc. 14-2 at ¶ 14).

The Saudi court has instructed Deloitte to conduct its valuation independently. (Doc. 14-3 at ¶ 24).  And the Saudi court has empowered Deloitte to seek documents/ information relevant to its valuation from the parties directly.  (*Id.*)  However, the Saudi court has also reserved the right to appoint another valuator if the parties, including Petitioner, do not accept (*i.e.*, object to) the valuation.  (Doc. 22-3 at ¶ 12).

At present, the California Litigation is stayed pending the outcome of the valuation proceedings.  (Doc. 14-23 at 81–91).  All parties to the California Litigation stipulated to the stay.  (*Id.*)

### B.  The instant litigation

On October 3, 2019, Petitioner filed an application in this Court for the issuance of two § 1782(a) subpoenas to P&G—"for use" in the Saudi Litigation.  (Doc. 1).  The § 1782(a) subpoenas primarily seek information relating to the financial performance/ ownership structure of two Saudi entities, jointly owned by Al Safwa (an Abudawood

Group company) and P&G (an Ohio entity): Modern Industries and Modern Products (collectively the "Modern Entities").[5]  (*See* Docs. 7, 8; *see also* Doc. 21-1 at ¶ 3).

To be clear, P&G does not hold any direct interest in the Modern Entities.  (Doc. 21-1 at ¶ 3).  Instead, P&G's wholly-owned subsidiary—Detergent Products SAR ("Detpro"), a Swiss entity—owns a direct interest in the Modern Entities, by way of its participation in a joint venture with Al Safwa.  (*Id.*)  Accordingly, the § 1782(a) subpoenas only seek that information about the Modern Entities, which is both responsive to the § 1782(a) subpoenas and within P&G "possession, custody, or control." (*See* Doc. 7 at 7–8 at 8; Doc. 39 at 18).

On October 16, 2019, the Magistrate Judge issued an order granting Petitioner's application for the issuance of the § 1782(a) subpoenas, after determining that the information sought was relevant to the matters at issue in the Saudi Litigation.  (Doc. 6 at 2–5).  Thereafter, on November 6, 2019, Petitioner served the § 1782(a) subpoenas on P&G.  (Docs. 9, 10).  On November 14, 2019, the intervenors filed a motion to quash the § 1782(a) subpoenas and vacate the Magistrate Judge's prior order.  (Doc. 14).  And, on November 20, 2019, Petitioner filed a motion to compel compliance with the § 1782(a) subpoenas.  (Doc. 19).

On January 27, 2020, the Magistrate Judge issued an Order denying the intervenors' motion to quash/vacate and granting Petitioner's motion to compel.  (Doc. 31).  In that Order, the Magistrate Judge ordered P&G to comply with the § 1782(a)

---

[5] The § 1782(a) subpoenas also seek certain information about communications, involving P&G, regarding Petitioner/AA's inherited interests and the California Litigation.  (Docs. 7, 8).

subpoenas.  (*Id.* at 11).  However, the Magistrate Judge did not order P&G to produce

any evidence responsive thereto immediately.  (*Id.*)  Instead, to eliminate any potential

issues regarding the breadth/burden of the § 1782(a) subpoenas, the Magistrate Judge

directed Petitioner and P&G to: (1) meet and confer about the proper scope of discovery;

and (2) contact the Court if/as needed for an informal discovery conference.  (*Id.*)

On February 10, 2020, the Objectors filed Objections to the Order.[6]  (Docs. 36,

38).  Then, on February 19, 2020, Petitioner filed both a response in opposition to the

Objections and a motion for expedited consideration.  (Docs. 39, 40).  The next day, this

Court issued an order denying the specific relief sought in Petitioner's motion for

expedited consideration but indicating that it would work to consider the Objections

promptly.  (Doc. 41).

Since the issuance of the Order, Deloitte has completed a draft valuation.  (Doc.

40 at 3).  Deloitte has based the draft valuation on financial records provided to it by the

Abudawood Group companies.  (Doc. 14-2 at ¶¶ 12–18).

## II.    Legal standard

"Section 1782 provides federal-court assistance in gathering evidence and

testimony for use in foreign tribunals."  *JSC MCC EuroChem v. Chauhan*, No. 18-5890,

2018 WL 9650037, at *1 (6th Cir. Sept. 14, 2018).  To invoke § 1782: an applicant must

meet the statutory requirements set forth in § 1782(a); and the district court must

determine that the issuance of discovery is proper under certain discretionary factors (the

---

[6] *See* n.2, *supra.*

"*Intel* factors"). *Id.* (citing *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 264 (2004)).

In relevant part, § 1782(a) provides as follows:

> The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal, including criminal investigations conducted before formal accusation. The order may be made pursuant to a letter rogatory issued, or request made, by a foreign or international tribunal or upon the application of any interested person and may direct that the testimony or statement be given, or the document or other thing be produced, before a person appointed by the court. . . . The order may prescribe the practice and procedure, which may be in whole or part the practice and procedure of the foreign country or the international tribunal, for taking the testimony or statement or producing the document or other thing. To the extent that the order does not prescribe otherwise, the testimony or statement shall be taken, and the document or other thing produced, in accordance with the Federal Rules of Civil Procedure.

28 U.S.C. § 1782(a).

The Magistrate Judge properly summarized the *Intel* factors as follows:

> (1) whether the person from whom the discovery is sought is a participant in the foreign proceeding such that the discovery is within the foreign tribunal's jurisdictional reach and thus accessible absent [§] 1782 relief; (2) the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign court to U.S. federal court assistance; (3) whether the [§] 1782 request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of the foreign country or the United States; and (4) whether the subpoena contains unduly intrusive or burdensome requests.

(Doc. 31 at 5 (citing *Intel*, 542 U.S. at 264–66)).

Ultimately, whether discovery is appropriate under these factors is within the district court's discretion.  *Chauhan*, 2018 WL 9650037, at *1.

## III.   Objections[7]

### A.  Compliance with 28 U.S.C. § 1782(a)

In the Order, the Magistrate Judge properly concluded that the subpoenas comply with § 1782(a).  (Doc. 31 at 6–8).  The Objectors raise two different arguments in opposition to this conclusion.  (Docs. 36, 38).  Neither is persuasive.

#### 1.     *The "found in" argument*

First, the Objectors argue that Petitioner has failed to establish that the § 1782(a) subpoenas target an entity "'found' in the judicial district."  (Doc. 36 at 11).  The Objectors admit that the actual recipient of the § 1782(a) subpoenas (P&G) is a resident of Ohio.  (*Id.*)  But the Objectors assert that the "true target" of the § 1782(a) subpoenas (the Modern Entities) are not.  (*Id.*)  Citing *Kestrel Coal Pty. Ltd. v. Joy Glob., Inc.*, 362 F.3d 401 (7th Cir. 2004), the Objectors claim that § 1782(a) does not permit a petitioner to subpoena a domestic corporation (such as P&G) for the records of its foreign affiliates (such as the Modern Entities), absent a "showing to pierce the corporate veil."  (Doc. 36 at 12).  The Court is not persuaded.

---

[7] The parties dispute whether an order resolving an action brought under 28 U.S.C. § 1782(a) constitutes a nondispositive order requiring plain error review or a dispositive order requiring *de novo* review.  (*Compare* Doc. 36 at 9 (citing *Phillips v. Beierwaltes*, 466 F.3d 1217 (10th Cir. 2006)), *with* Doc. 39 at 6 (citing *JSC MCC EuroChem v. Chauhan*, No. 3:17-MC-5, 2018 WL 3872197 (M.D. Tenn. Aug. 15, 2018))).  It does not appear that the Sixth Circuit has provided any guidance on this issue.  However, here, that issue does not matter as, here, the Order is sustained under both standards of review.  (Doc. 31).

As an initial matter, the Objectors wildly overcomplicate § 1782(a)'s "found in" requirement. That requirement is satisfied when the recipient of the § 1782(a) subpoena "resides or is found" in the same district as the court considering the § 1782(a) application. 28 U.S.C. § 1782(a). Here, Petitioner has directed the § 1782(a) subpoenas to P&G. (Docs. 7, 8). And P&G indisputably resides in the Southern District of Ohio—the same district as this Court. (Doc. 36 at 11). Thus, Petitioner has satisfied § 1782(a)'s "found in" requirement.

Moreover, the Objectors' "true target" argument misses the mark. (Doc. 36 at 11). To be clear, the Objectors do not dispute that the § 1782(a) subpoenas were directed to P&G, that the § 1782(a) subpoenas were served on P&G, or that the § 1782(a) subpoenas ask P&G to produce evidence in P&G's possession, custody, or control. (Docs. 7, 8, 9, 10). What the Objectors really dispute is whether the § 1782(a) subpoenas should have targeted someone else—*i.e.*, the Modern Entities. (*See* Doc. 36 at 11). Thus, the Objectors do not really raise a "true target" argument; they raise a "wrong target" argument.

But, on the Court's review, P&G is not a "wrong target." Section 1782(a) authorizes discovery to proceed "in accordance with the Federal Rules of Civil Procedure." 28 U.S.C. § 1782(a). And the Federal Rules of Civil Procedure require a subpoenaed party to produce those records in its "possession, custody, <u>or</u> control." Fed. R. Civ. P. 45(a)(1)(A)(iii) (emphasis added). Under Sixth Circuit precedent, documents are within a party's "possession, custody, or control" if "the party has *actual* possession, custody or control, or has the legal right to obtain the documents on demand." *In re*

*Bankers Tr. Co.*, 61 F.3d 465, 469 (6th Cir. 1995) (referencing Fed. R. Civ. P. 34); *cf. In re Richardson-Merrell, Inc.,* 97 F.R.D. 481, 483 (S.D. Ohio 1983) (ordering a multinational corporation to produce those records in the care, custody, or control of its foreign subsidiaries).

Here, the § 1782(a) subpoenas primarily seek information relating to the financial performance/ownership structure of two Saudi entities, jointly owned by Al Safwa (an Abudawood Group company) and P&G (through Detpro, its wholly-owned subsidiary): the Modern Entities. (*See* Docs. 7, 8; *see also* Doc. 21-1 at ¶ 3). Petitioner has asserted that, as a joint owner of the Modern Entities, P&G has either the actual possession/custody of or the right to demand (from Detpro) at least <u>some</u> of the requested discovery. (*See, e.g.*, Doc. 39 at 18). And P&G has not disputed this assertion, through objections or otherwise.[8] (*Id.*; *see* Doc. 19-2; Doc. 21-1). Thus, P&G is a proper target.

Finally, nothing in *Kestrel* supports the proposition that P&G is an improper target. (Doc. 36 at 12). In *Kestrel*, the petitioner sought to serve a § 1782(a) subpoena on

---

[8] To be sure, P&G has averred that, as a "result of the ownership, business operations, and management of the Modern Entities . . . , little information responsive to the subpoenas issued to P&G in this matter would exist in Cincinnati." (Doc. 21-1 at ¶ 6). P&G has averred that "[s]earching for and collecting documents and information responsive to the subpoenas, to the extent it exists, would require extensive efforts in several other countries and involve numerous employees of entities other than P&G . . . ." (*Id.*) And P&G has claimed that "[i]t is not enough to say P&G 'has' the requested discovery if it 'has' it in locations outside the United States that are inappropriate and unduly burdensome subjects of § 1782 discovery." (Doc. 38 at 8). But these points do not dispute Petitioner's assertion that P&G has either the actual possession/ custody of or the right to demand (from Detpro) at least <u>some</u> of the requested discovery. To the contrary, these points indicate that P&G can access some of the requested discovery at its Cincinnati headquarters, and that P&G can demand other of the requested discovery from its foreign affiliates. The Court is, of course, sensitive to P&G's concerns regarding burden, which pertain to the fourth *Intel* factor, and which are addressed in section III.C, *infra*.

a domestic corporation, seeking certain documents held by that domestic corporation's foreign subsidiaries, "for use" in a foreign proceeding. 362 F.3d at 402–04. On review, the Seventh Circuit concluded that the petitioner was not entitled to the documents in the possession of the domestic corporation's foreign subsidiaries. *Id.* at 403. The Seventh Circuit reasoned that "[o]ne uses [the Federal Rules of Civil Procedure] to get documents from firms that <u>possess</u> them, not from their corporate affiliates." *Id.* at 405 (emphasis added). And the Seventh Circuit noted that § 1782(a) "neither instructs, nor permits, courts to disregard the distinction between the corporation that owns a set of documents, and a different corporation that owns stock in the first entity," absent a showing such as that needed to pierce the corporate veil. *Id.*

While, on first blush, *Kestrel* appears analogous to this case, a close reading renders it distinguishable—for at least two reasons. As an initial matter, the Seventh Circuit did not actually determine whether the petitioner may otherwise be entitled to the documents sought under § 1782(a). *Id.* at 406. The Seventh Circuit did not need to reach this determination because it found another ground on which to dispense with the case: the foreign tribunal overseeing the foreign proceeding had already determined that the documents were irrelevant. *Id.* But, more importantly, the Seventh Circuit did not actually reach the key question at-issue here: whether a court can order a domestic corporation to produce those records which it has the <u>right to demand</u> (*i.e.*, has control over) from its foreign subsidiaries. *See id.* at 404–06. The Seventh Circuit's analysis focused on the issue of <u>possession, not control</u>. *See id.*

As set forth *supra*, applicable precedent indicates that production is warranted when such control exists. *Accord Bankers*, 61 F.3d at 469; *Richardson*, 97 F.R.D. at 483. And other courts that have considered § 1782(a) discovery requests have reached similar conclusions.[9] *See, e.g.*, *Sergeeva v. Tripleton Int'l Ltd.*, 834 F.3d 1194, 1201 (11th Cir. 2016) (concluding that a domestic corporation was required to produce documents held by its foreign affiliates, pursuant to a § 1782(a) subpoena, as the domestic corporation had the legal right to demand them).

The Objectors' first argument is not availing.

## 2. *The "for use" argument*

Next, the Objectors argue that Petitioner has failed to establish that the subpoenas seek information "for use" in a foreign proceeding. (Doc. 36 at 12; Doc. 38 at 3). The Objectors claim that Petitioner intends to use the requested discovery in the California Litigation rather than the Saudi Litigation. (Doc. 36 at 12; Doc. 38 at 3–4). In support of this claim, the Objectors, *inter alia*: note that three of Petitioner's discovery requests seek documents regarding "the dispute pending in the United States District Court, Central

---

[9] The Objectors claim, in passing, that Petitioner has not met its burden to show that P&G has control over the requested discovery. (Doc. 36 at 12). But the burden to prove control arises only where the existence of control is contested in the first place. *See, e.g.*, *Alexander Interactive, Inc. v. Adorama, Inc.*, No. 1:12-CV-6608, 2014 WL 61472, at *3 (S.D.N.Y. Jan. 6, 2014) ("Where control is contested, the party seeking production of documents bears the burden of establishing the opposing party's control over those documents." (emphasis added)); *A.H. ex rel. Hohe v. Knowledge Learning Corp.*, No. 2:09-CV-2517, 2010 WL 4117508, at *9 (D. Kan. Oct. 19, 2010) ("When the issue of control is in dispute, the party seeking production of the documents bears the burden of proving that the opposing party has the control required under [the Federal Rules of Civil Procedure]." (emphasis added)). Here, as set forth in n.8, *supra*, P&G has not actually contested that it has control over at least some of the requested discovery. (Doc. 21-1 at ¶ 6; Doc. 38 at 8). In fact, P&G has effectively indicated the opposite. (Doc. 21-1 at ¶ 6; Doc. 38 at 8). Thus, the Objectors' claim is without merit.

District of California" (Doc. 36 at 13; Doc. 38 at 3–4); and assert that Petitioner has no

"mechanism to use her requested discovery in the Saudi [Litigation]" because the Saudi

court has instructed Deloitte to conduct its valuation independently (Doc. 36 at 12–13;

Doc. 38 at 4).  Again, the Court is not persuaded.

The Court finds no reason to believe that Petitioner issued the § 1782(a)

subpoenas for use in a domestic, as opposed to a foreign, proceeding.  As an initial

matter, the California Litigation is stayed pending the completion of the Saudi court's

valuation of Petitioner's interests.  (Doc. 14-23 at 81–91; Doc. 31 at 8).  Thus, at present,

there is no indication that Petitioner intends to use the requested discovery in the

California Litigation.  Moreover, Petitioner has asked P&G to produce the requested

discovery pursuant to a protective order that prohibits its use outside the Saudi Litigation

without written consent or court order.  (Doc. 3 at ¶ 8).  Thus, moving forward, there is

no indication that Petitioner intends to use the requested discovery in the California

Litigation.

To be sure, three of Petitioner's discovery requests seek documents regarding the

California Litigation.  (Doc. 7 at 19–20).  However, this point does not indicate that

Petitioner intends to use the requested discovery in the California Litigation.  On the

Court's review, the California Litigation involves some of the same buyout/valuation

matters at issue in the Saudi Litigation.  (Doc. 14-23 at Ex. A; Doc. 1-2 at ¶¶ 13–14).  As

such, the Court is not altogether surprised that Petitioner suspects that some of the

documents relevant to the California Litigation may also be relevant to the Saudi

Litigation.

Moreover, to be sure, the Saudi court has appointed Deloitte to conduct its valuation independently. (Doc. 14-3 at ¶ 24). However, this does not mean that Petitioner is without a "mechanism to use her requested discovery in the Saudi [Litigation]." (Doc. 36 at 13). To the contrary, the Saudi court has reserved the right to appoint a second valuator if the parties, including Petitioner, do not accept (*i.e.*, object to) Deloitte's valuation. (Doc. 22-3 at ¶ 12). As a result, Petitioner will be able to place the requested discovery in front of the Saudi court by way of the objections (if any) she chooses to file to Deloitte's valuation. (*See* Doc. 27 at 9–10; *accord* Doc. 1-2 at ¶ 22).

The Objectors' second argument is not availing.

### B. Compliance with the *Intel* factors

In the Order, the Magistrate Judge properly concluded that each of the *Intel* factors weighs in favor of discovery. (Doc. 31 at 8–11). The Objectors raise two notable arguments in opposition to this conclusion.[10] (Docs. 36, 38). Neither is persuasive.

#### 1. *The first Intel factor*

First, the Objectors argue that Petitioner has failed to satisfy the first *Intel* factor, which considers: "whether the person from whom the discovery is sought is a participant in the foreign proceeding such that the discovery is within the foreign tribunal's jurisdictional reach . . . ." (Doc. 31 at 5 (citing *Intel*, 542 U.S. at 264–66); Doc. 36 at 15).

---

[10] The Objectors challenge the Order's analysis of each of the *Intel* factors. (*See* Docs. 36, 38). However, the Objectors' arguments regarding *Intel*'s third factor largely restate their arguments regarding § 1782(a)'s "for use" requirement. And the Objectors' arguments regarding *Intel*'s fourth factor are addressed in section III.C, *infra*. Thus, this section does not address those arguments.

The Objectors admit that P&G is not a party to the Saudi litigation. (Doc. 36 at 15). But the Objectors claim that the discovery Petitioner seeks is nonetheless available to the Saudi court. (*Id.*) The gist of the Objectors' argument is: that the Abudawood Group companies (particularly Al Safwa) are able to produce the Modern Entities' financial records; and the Abudawood Group companies (which are parties to the Saudi Litigation) are within the jurisdictional reach of the Saudi court. (*Id.* at 15–16 (citing *Schmitz v. Bernstein Liebhard & Lifshitz, LLP.*, 376 F.3d 79 (2d Cir. 2004))). The Court is not persuaded.

Petitioner certainly seeks information about the Modern Entities' finances. However, Petitioner does not seek those of the Modern Entities' financial records that are in the <u>Abudawood Group companies</u>' possession, custody, or control; Petitioner only seeks those of the Modern Entities' financial records that are in <u>P&G</u>'s possession, custody, or control. (*See* Doc. 7 at 7–8; Doc. 39 at 18). This distinction is important.

Deloitte has recently completed a draft valuation of the Abudawood Group companies. (Doc. 40 at 3). And Deloitte has based that draft valuation on those financial records it has received from Petitioner's adversaries in the Saudi Litigation (the Abudawood Group companies). (Doc. 14-2 at ¶¶ 12–18). As the Court understands it, Petitioner wants to obtain information about the Modern Entities' financial records from an independent party (P&G) as opposed to her litigation adversaries (the Abudawood Group companies), to ensure that the information on which Deloitte has based its draft valuation is accurate. (*See* Doc. 22 at 13–14; Doc. 39 at 13–14). As <u>P&G</u> is not a party

to the Saudi Litigation, its records fall outside the jurisdictional reach of the Saudi Court, and the first *Intel* factor weighs in favor of discovery.[11]

Importantly, *Schmitz*, the primary case on which the Objectors rely for their argument to the contrary, aligns with this conclusion. (Doc. 36 at 15). In *Schmitz*, the petitioners tried to obtain documents from Deutsche Telekom AG ("DT"), their adversary in foreign litigation, by issuing § 1782(a) subpoenas to, *inter alia*, DT's U.S.-based counsel: Cravath, Swaine & Moore ("Cravath"). 376 F.3d at 81–82. On review, the district court denied the petitioners' application for § 1782(a) discovery, and the Second Circuit affirmed the district court's ruling. *Id.* at 83, 85.

In affirming the district court's ruling, the Second Circuit said the following about the first *Intel* factor:

> The [district] court's decision to deny discovery also finds support in the first factor noted by the Supreme Court in *Intel*. Although technically the respondent in the district court was Cravath, for all intents and purposes [the] petitioners are seeking discovery from DT, their opponent in the [foreign] litigation. *Intel* suggests that because DT is a participant in the [foreign] litigation subject to [the foreign] court['s] jurisdiction, [the] petitioners' need for § 1782 help "is not as apparent as it ordinarily is when evidence is sought from a nonparticipant in the matter arising abroad."

---

[11] The Court notes that Petitioner has previously had issues obtaining information regarding the Abudawood Group companies' valuation. (Doc. 22-2). The parties originally retained Onyx Financial Consulting ("Onyx") to perform a valuation of the Abudawood Group companies at the insistence of the Abudawood Group companies' counsel. (*Id.* at ¶¶ 5–7). But, according to a declaration submitted by Petitioner's counsel, neither Petitioner nor her counsel were permitted to review the data and documents underlying the Onyx valuation, and valuation experts retained by Petitioner's counsel were only permitted to review "certain" of such data and documents. (*Id.* at ¶ 12). Petitioner eventually objected to the Onyx valuation after discovering that "Onyx was not a licensed appraiser in Saudi Arabia." (*Id.* at ¶ 14). The Saudi court subsequently "ordered that the Onyx Valuation Report be disregarded and a new valuator be appointed." (*Id.*; *accord* Doc. 31 at 3).

*Id.* at 85 (quoting *Intel*, 542 U.S. at 264).

Here, as explained *supra*, Petitioner does not seek those documents that are in the possession, custody, or control of her adversaries in the Saudi Litigation, either directly or indirectly; Petitioner only seeks those documents that are in the possession, custody, or control of P&G, an independent third party.  (*See* Doc. 7 at 7–8; Doc. 39 at 18).  As Petitioner seeks discovery from a nonparticipant in the matter arising abroad, rather than a participant in the same, *Schmitz* supports the Magistrate Judge's conclusion that the first *Intel* factor weighs in favor of discovery.  *Schmitz*, 376 F.3d at 85.

The Objectors' first argument is not availing.

## 2. *The second Intel factor*

Next, the Objectors argue that Petitioner has failed to satisfy the second *Intel* factor, which considers: "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign court to U.S. federal court assistance . . . ."  (Doc. 31 at 5 (citing *Intel*, 542 U.S. at 264–66); Doc. 36 at 16). The Objectors claim that "numerous relevant facts" show that the Saudi court will not be receptive to this Court's assistance, such as: "(a) the Saudi court ha[s] issued an order requiring Deloitte to conduct its valuation independently; (b) Deloitte ha[s] been successful in obtaining the information it needed; (c) neither Deloitte nor the Saudi court ha[ve] asked for assistance; and (d) Saudi Arabia has not acceded to the Hague Evidence Convention."  (Doc. 36 at 16).  Again, the Court is not persuaded.

Points (a)–(b) ignore the fact that, while the Saudi court has instructed Deloitte to conduct its valuation of the Abudawood Group companies independently, and while the

Saudi court has empowered Deloitte to seek documents/information relevant to its valuation from the parties directly, the Saudi court has <u>also</u> reserved the right to appoint another valuator if the parties, including Petitioner, do not accept (*i.e.*, object to) Deloitte's valuation. (Doc. 14-3 at ¶ 24; Doc. 22-3 at ¶ 12). This procedure indicates that, while the Saudi court wants to ensure that Deloitte has the opportunity to prepare an independent valuation as an initial matter, the Saudi court <u>also</u> wants to ensure that the parties have the opportunity to analyze/supplement Deloitte's efforts to ensure their adequacy. Under such circumstances, it seems plain to this Court that the Saudi court will accept information, such as that sought by Petitioner, which will help the parties carefully consider Deloitte's valuation. (*Accord* Doc. 1-2 at ¶ 22).

Point (c) seems to rely on the assumption that a foreign court (or an appointed valuator) must request a federal court's assistance under § 1782(a). But the plain language of the statute states that "<u>any interested person</u>" may make such a request. 28 U.S.C. 1782(a) (emphasis added). Certainly Petitioner, a party to the Saudi Litigation, is just such an interested person.

And point (d) is not dispositive. The Court acknowledges that Saudi Arabia has not acceded to the Hauge Evidence Convention. But, on this Court's review, at least one other federal court has permitted § 1782(a) discovery for use in Saudi proceedings. *See Ahmad Hamad Algosaibi & Bros. Co. v. Standard Chartered Int'l (USA) Ltd.*, 785 F. Supp. 2d 434, 438 (S.D.N.Y. 2011) (permitting § 1782(a) discovery for use in a Saudi proceeding). In the end, the Magistrate Judge properly concluded that the second *Intel* factor weighs in favor of discovery.

The Objectors' second argument is not availing.

## C. Consideration of location/burden

Finally, in the Order, the Magistrate Judge properly set forth a procedure by which Petitioner and P&G can work together to avoid undue breadth/burden. (Doc. 31 at 10–11). To quote directly from the Order:

> It is further **ORDERED** that, within **TEN** days of this Order, Petitioner and P&G are directed to meet and confer in good faith to reach an agreement regarding the scope of specific documents requested, any ESI issues and deposition topics. If Petitioner and P&G are unable to reach a consensus, the parties shall contact the Court to schedule an informal discovery dispute conference.

(*Id.* at 11). The Objectors raise two different arguments in opposition to this procedure. (Docs. 36, 38). Neither is persuasive.

### 1. *The location argument*

First, the Objectors argue that the procedure is improper, because it does not limit the scope of P&G's production to evidence located in the United States. (Doc. 38 at 7–8). The Objectors draw this Court's attention to a line of cases holding that § 1782(a) incorporates a *per se* bar to the discovery of evidence located outside the United States. (*Id.* at 7). Further, the Objectors claim that Petitioner is trying to turn this Court into a "'clearing house[] for requests for information from courts and litigants all over the world in search of evidence to be obtained . . . all over the world.'" (*Id.* at 7–8 (quoting *In re Judicial Assistance Pursuant to 28 U.S.C. 1782 by Macquarie Bank Ltd.*, No. 2:14-CV-797, 2015 WL 3439103, at *10 (D. Nev. May 28, 2015)). The Court is not persuaded.

Among the district courts, "there is a split of authority as to 'whether § 1782(a) incorporates a *per se* bar to the discovery of [evidence] located outside the United States.'" *In re Application for Discovery Pursuant to 28 U.S.C. § 1782*, No. 1:19-MC-102, 2020 WL 364222, at *6 (N.D. Ohio Jan. 22, 2020) (quoting *In re Veiga*, 746 F. Supp. 2d 8, 25 (D.D.C. 2010)). However, both of the Circuit courts that have considered the issue (the Second and Eleventh Circuits) have reached the same conclusion: no such *per se* bar exists. *In re del Valle Ruiz*, 939 F.3d 520, 531–33 (2d Cir. 2019); *Sergeeva*, 834 F.3d at 1199–1200.

This Court finds the reasoning employed by the Second and Eleventh Circuits persuasive. The plain text of § 1782(a) authorizes discovery to proceed "in accordance with the Federal Rules of Civil Procedure." 28 U.S.C. § 1782(a). And the Federal Rules of Civil Procedure, in turn, authorize extraterritorial discovery so long as the evidence to be produced is within the subpoenaed party's "possession, custody, or control." *See* Fed. R. Civ. P. 45(a)(1)(A)(iii); *Ruiz*, 939 F.3d at 533; *Sergeeva*, 834 F.3d at 1199; *Richardson,* 97 F.R.D. at 483. Accordingly, § 1782(a) likewise allows extraterritorial discovery.[12]

The Court is, of course, sensitive to the fact that it should not simply become a "clearing house[]" for information located abroad; such an end would inevitably impose

---

[12] It appears that one case in this district has reached the opposite conclusion; however, that case relied on a line of reasoning, from the Second Circuit, which has since been abrogated. *In re Application Pursuant to 28 U.S.C. Sec. 1782*, No. 1:14-MC-44, 2014 WL 4181618, at *3 (S.D. Ohio Aug. 21, 2014) (citing *In re Godfrey*, 526 F. Supp. 2d 417, 423 (S.D.N.Y. 2007), *abrogated by Ruiz*, 939 F.3d at 520).

an undue burden on both the Court itself and the litigants before it. (Doc. 38 at 7). However, under the facts of this case, the Court trusts that Petitioner and P&G—with the Magistrate Judge's assistance, if needed—will be able to reach an agreement as to a proper scope of discovery, that adequately considers any burden associated with the retrieval of any responsive information, which, although in P&G's possession, custody, or control, is located abroad. (Doc. 31 at 11).

The Objectors' first argument is not availing.

### 2. *The burden argument*

Next, the Objections argue that the procedure is improper, because it does not engage in a line-by-line examination of Petitioner's discovery requests. (Doc. 36 at 19–20; Doc. 38 at 6–7). For example, the Objectors claim: that the "Order did not meaningfully examine" the discovery requests in the subpoenas (Doc. 36 at 5); that the "46 different deposition topics . . . would be unduly burdensome even for party discovery" (Doc. 38 at 6); and that the "largescale demand for decades-worth of documents" is "overbroad," "intrusive," and "expansive" (Doc. 36 at 20; *accord* Doc. 38 at 6–7). Again, the Court is not persuaded.

The Court is cognizant of the fact that the discovery requests before it are, by Petitioner's own admission, both extensive and burdensome. (*See* Doc. 19-3 at 1). Nonetheless, all of the Objectors' concerns suffer from the same flaw: the Magistrate Judge has already provided P&G with a way of dealing with them. (*See* Doc. 31 at 10–11).

P&G can sit down with Petitioner to discuss the proper scope of discovery. (*Id.*) And P&G can contact the Court for an informal discovery conference if/as appropriate. (*Id.*) The Court will not allow P&G to throw up its hands and claim that undue breadth/burden exists, before it has put in the time to engage in fulsome meet and confer efforts with Petitioner.

On this Court's review, other district courts have afforded a similar form of relief, with regard to the proper scope of discovery available under § 1782(a), as that afforded by the Magistrate Judge in this case. *See Ahmad*, 785 F. Supp. 2d at 438 (granting a request for discovery under § 1782(a) and directing the parties to employ largely the same procedure, to address the subpoena recipient's concerns regarding the scope of discovery, as that ordered by the Magistrate Judge in this case: a meet and confer, followed by court intervention, if necessary); *see also In re Kleimar N.V v. Benxi Iron & Steel Am., Ltd.*, No. 1:17-CV-1287, 2017 WL 3386115, at *7 (N.D. Ill. Aug. 7, 2017) (encouraging the issuer and the recipient of a § 1782(a) subpoena "to work cooperatively to narrow the discovery requests as appropriate").

The Objectors' final argument is not availing.

## IV.    Conclusion

As required by 28 U.S.C. § 636 and Fed. R. Civ. P. 72, the Court has reviewed the comprehensive findings of the Magistrate Judge and considered all of the filings in this matter. Upon consideration of the foregoing, the Court finds that the Order should be and is hereby affirmed.

Accordingly, for the reasons stated *supra*:

1. The Order (Doc. 31) is **AFFIRMED**;

2. The Objections (Docs. 36, 38) are **OVERRULED**;

3. Petitioner's motion to compel (Doc. 19) is **GRANTED**;

4. The intervenors' motion to quash/vacate (Doc. 14) is **DENIED**;

5. The stay imposed on February 4, 2020 (Doc. 35) is **LIFTED**;

6. Within **three business days** of the date of this Order, Petitioner and P&G shall meet and confer, as described in the conclusion of the Order (*see* Doc. 31 at 11); and

7. Should the parties' meet and confer prove unsuccessful, the parties shall **immediately** contact the Magistrate Judge to schedule an informal discovery conference (*see id.*).

**IT IS SO ORDERED.**

Date: 3/12/2020

Timothy S. Black
United States District Judge